IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| **LUCIA LEDEZMA** § | | |
| *Plaintiff,* § | | |
| § | CIVIL ACTION NO. _____ | |
| v. § | | |
| § | | |
| **CITY OF MISSION, TEXAS, OMAR** § | (JURY DEMANDED) | |
| **DIAZ DE VILLEGAS, CHIEF MARTIN** § | | |
| **GARZA, JR. and CHIEF ROBERT** § | | |
| **DOMINGUEZ** § | | |
| *Defendants.* § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT
& DEMAND FOR JURY TRIAL**

**- Introduction -**

1.01   This is a false arrest and excessive force action for money damages brought by Lucia Ledezma arising from violations of her federal civil rights committed by the named Defendants.

**II.  PARTIES**

2.01   Plaintiff, Lucia Ledezma, resides in Hidalgo County, Texas.

2.02   Defendant, City of Mission, Texas, is a duly incorporated home rule city and political subdivision of the State of Texas, and is capable of being sued in this Court. Defendant, City of Mission, Texas, is responsible for the policies, practices, and customs of its police department, as well as the hiring, training, supervision, control and discipline of its police officers, detectives, and jailors. Defendant, City of Mission, Texas, is and was the employer of the police personnel named herein as an individual defendant. Defendant, City of Mission, Texas, can be served by serving:

Mayor Norberto Salinas
1201 E. 8th Street
Mission, Texas 78572

2.03 Defendant, Omar Diaz de Villegas (hereafter "Diaz de Villegas"), is a resident of Hidalgo County, Texas. At all times material to this suit, he was employed as a police officer by the City of Mission Police Department. Each of the acts complained of arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment with the Mission Police Department. Defendant, Diaz de Villegas, is sued in his individual and official capacities, and can be served with service of process at the following address:

1200 E. 8th Street
Mission, Texas 78572

2.04 Defendant, POLICE CHIEF MARTIN GARZA, JR. (hereafter "Chief Garza"), is a resident of Mission, Hidalgo County, Texas. At all times material to this suit, he was employed as the Mission Police Chief. Each of the acts complained of arise from the conduct of Chief Garza while acting under color of state law, and were committed within the scope of his employment with the Mission Police Department. Defendant, Chief Garza, is sued in his individual and official capacities, and can be served with service of process at the following address:

1200 E. 8th Street
Mission, Texas 78572

2.05 Defendant, POLICE CHIEF ROBERT DOMINGUEZ (hereafter "Chief Dominguez"), is a resident of Mission, Hidalgo County, Texas. At all times material to this suit, he was employed as the Mission Police Chief. Each of the acts complained of arise from the conduct of Chief Dominguez while acting under color of state law, and

were committed within the scope of his employment with the Mission Police Department. Defendant, Chief Dominguez, is sued in his individual and official capacities, and can be served with service of process at the following address:

> 1200 E. 8th Street
> Mission, Texas 78572

## III. JURISDICTION & VENUE

3.01   Pursuant to 28 U.S.C. § 1331, this Court has original, federal question jurisdiction over Plaintiff's 42 U.S.C § 1983 claims against defendants. The Court has supplemental jurisdiction over the state law claims in this suit pursuant to 28 U.S.C. § 1367(a) because such claims are so related to the federal claims in that all of such federal and state claims form part of the same case or controversy under article III of the United States Constitution.

3.02   Venue is proper in this district because it is a district in which a substantial part or the events or omissions giving rise to the claims occurred. 28 U.S.C.§ 1391(b).

## IV.  BACKGROUND

4.01   On or about July 18, 2012, Plaintiff, Lucia Ledezma, (hereafter "Ms. Ledezma"), drove her pick-up on Mayberry Road in Mission, Texas.

4.02   She was pulled over by Defendant, Diaz de Villegas, who asked for her driver's license and proof of insurance. She complied. Defendant, Diaz de Villegas, a former soldier, then asked her to exit the truck in order to perform a field sobriety test. Plaintiff, however, could not perform said test due to a low-back surgery and being nervous from Diaz de Villegas' yelling and barking. She advised Defendant Diaz de Villegas that she had not consumed alcohol that night.

4.03   Nonetheless, Defendant, Diaz de Villegas arrested Ms. Ledezma for driving while

intoxicated. Ms. Ledezma did not resist before or after being handcuffed. Defendant, Diaz de Villegas, however, violently grabbed her arms and placed them behind her back in order to handcuff her. At this time, Ms. Ledezma heard something "pop" in her right arm. She then asked Diaz de Villegas not to pull her so hard because of the pain in her right arm.

4.04   Diaz de Villegas then picked her up by the handcuffs, and violently threw her head first into the back of the patrol unit. This caused Ms. Ledezma's head to come in contact with hard shell (plastic or metal) which was located on the back of the front seat. Diaz de Villegas then pushed her further into the patrol unit with his knee in order to close the patrol unit's door.

4.05   Once inside the patrol unit, Diaz de Villegas did not take Ms. Ledezma to the Mission Police Department. Instead, Defendant drove her to the Palmview Police Department where she was given a breathalyzer test.

4.06   The breath test results showed Ms. Ledezma was NOT intoxicated.

4.07   Diaz de Villegas mocked Plaintiff, and laughed about the incident during transport to the Mission Police Department.

4.08   Ms. Ledezma is right hand dominant.

4.09   Ms. Ledezma asked Diaz de Villegas to take her to a hospital. Diaz de Villegas responded by saying, "I'll take you, but you'll have to pay."

4.10   Diaz de Villegas took Ms. Ledezma to the Mission Police Department's jail. Later that night, Ms. Ledezma was taken by ambulance from the Mission Police Department jail to Mission Hospital for excruciating right shoulder pain. Her pain was so bad the ambulance paramedics gave her a morphine shot on the way to Mission Hospital. She

was later returned to the Mission jail.

4.11   Throughout her ordeal, Ms. Ledezma was not allowed to call any family members.

4.12   As a result of the Diaz de Villegas' abuse, Ms. Ledezma's right shoulder sustained torn tendons, causing pain and discomfort which radiates up towards her neck and her head as well as down towards her fingers tips.  She has a surgical recommendation. The injuries to Ms. Ledezma's right arm severely limit her ability to move her arm.  For example, she cannot even raise her right arm to brush her hair.  She fears her left arm is also injured.

4.13   After spending a night in jail, all charges (DWI and resisting arrest), arising from the Diaz de Villegas false arrest, magically disappeared.  In fact, Ms. Ledezma was never even taken before a judge.  She was released.

4.14   Ms. Ledezma later filed a written complaint regarding Defendant, Diaz de Villegas, on official City of Mission forms.  She also met with three high-ranking Mission police officers, including Chief Martin Garza and Sgt. Tiro.  She provided statements several times.  A high-ranking police officer even promised her the Mission Police Department would present her complaints to the City's insurance carrier in order to resolve the matter.   Ms. Ledezma never received a response.

4.15   Defendant, Chief Martin Garza, advised Ms. Ledezma that he would personally check the patrol unit's video footage to confirm her version of events.  Later, when Ms. Ledezma returned to the police department, Defendant Chief Martin Garza told her the patrol unit's video recording system was not working.

4.16 Defendant, Diaz de Villegas has a history of abusing arrestees. On or about December 19, 2011, along with other members of the Mission Police Department, Diaz de Villegas beat Kenneth John Snider after a warrantless arrest. Based on information and belief, Snider was already handcuffed when Diaz de Villegas struck Snider in the face, causing Snider to bleed severely. Snider was take to the hospital for treatment. Later, on or about September 13, 2013, Diaz de Villegas was suspended after cracking a suspect's head open with his service weapon. The incident took place in April 2013. Police officers from Palmview witnessed the incident. According to a Palmview police officer, Diaz de Villegas hit the arrestee twice on the head with his service weapon. Based on information and belief, Palmview police officers had asked him to stop. Diaz de Villegas then grabbed the handcuffed arrestee by the crotch, and threw him in the back of a patrol unit (consistent with his treatment of Ms. Ledezma). Video from the patrol units at the scene corroborated the witnesses' accounts.

## V. LIABILITY OF DEFENDANT DIAZ DE VILLEGAS UNDER 42 U.S.C § 1983

5.01   Plaintiff incorporates by reference the factual allegations contained in Section IV above.

5.02   Defendant, Diaz De Villegas, violated Ms. Ledezma's federal civil rights, including but not limited to the right against unreasonable searches and seizures, the right to due process of law, the right to be free from unlawful arrest and prosecution without probable cause, and the right to bodily integrity, causing damage for which Ms. Ledezma is entitled to recover. The U.S. Supreme Court has held that bodily integrity is a recognized liberty interest. ***Washington v. Glucksberg***, 521 U.S. 702 (1987). Every violation of the person's bodily integrity is an invasion of his or her liberty. ***Washington v. Harper***, 494 U.S. 210, 237 (1990). Diaz de Villegas' conduct on the night in question

deprived Ms. Ledezma of civil rights protected by the Fourth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

5.03   As a direct and proximate result of the Diaz de Villegas' acts, Ms. Ledezma suffered physical injury, pain and suffering, mental anguish, emotional distress and other damages.

## VI: MUNICIPAL LIABILITY

6.01   Plaintiff incorporates by reference the factual allegations contained in Section IV above.

6.02   Defendant, City of Mission, Texas, maintained a policy, custom, or practice of arresting citizens without probable cause, creating false police reports, using excessive force to subdue arrestees, failing to train its police officers and failing to supervise its police officers.  Defendant, City of Mission, tolerates unconstitutional police tactics by never disciplining its police officers.  The City of Mission simply ratifies said behavior, including that of Defendant Diaz de Villegas in the instant case.

6.03   Moreover, the City of Mission maintained a policy, custom or practices of unconstitutional police tactics.  Since 2010, there have been eight (8) cases filed against the City of Mission Police Department and its officers where deprivations of civil rights are alleged:

a.   ***Olvera et al v. City of Mission et al.***, 7:10-CV-00056, (Mar. 15, 2010) (wrongful death) (excessive force arising from choke hold) (failure to train);

b.   ***Aurignac v. Romero/Leas/Mission Police Department et al.***, 7:11-CV-00269, (Sept. 7, 2011) (unlawful search and seizure);

c.   ***Snider v. City of Mission & Omar Diaz de Villegas***, 7:12-CV-00310, (Sept. 4, 2012) (unlawful arrest) (failure to train, supervise) (ratification);

d.   ***Perez v. City of Mission et al.***, 7:13-CV-00261, (May 28, 2013) (unlawful search a and seizure by Mission/Panama Unit police officers);

e. *Course v. City of Mission*, 7:13-CV-606, (Nov. 5, 2013) (unlawful search and seizure by Mission/Panama Unit police officers);

f. *Rodriguez v. City of Mission*, 7:14-CV-00067 (Feb. 14, 2014) (unlawful arrest/search and seizure/false police reports by Mission/Panama Unit police officers) (failure to train);

g. *Carrizales v. City of Mission et al.*, 7:14-CV-00438 (Jun. 6, 2014) (unlawful arrest/search and seizure by Mission/Panama Unit police officers) (failure to train); and

h. *Shumaker v. City of Mission et al.*, 7:13-CV-00261 (Amended Complaint dated Jun. 26th, 2014) (unlawful arrest/search and seizure by Mission/Panama Unit police officers) (failure to train, supervise and discipline).

6.04   These policies and customs evidenced a deliberate indifference on the part of the City of Mission towards the constitutional rights of Ms. Ledezma and all persons present in the City of Mission and even Hidalgo County, Texas.

6.05   Defendant, the City of Mission, Texas, ratified the excessive force used by its police officers, including Defendant Diaz de Villegas.

6.06   Defendant, City of Mission's regulation, custom (i.e. persistent/widespread practice so common and well settled), or usage also subjected or caused to be subjected Ms. Ledezma to the deprivation of his rights secured by the Four and Fourteenth Amendments to the U. S. Constitution.

6.07   Defendants' policies and customs as referenced above were the moving force behind Ms. Ledezma's injuries.  Furthermore, the City of Mission's customs and practices, along with its failure to train and supervise its police officers, proximately caused Ms. Ledezma's injuries.

6.08   Specifically, the City of Mission's persistent and widespread unconstitutional policies, customs and practices proximately caused Ms. Ledezma's injuries and damages, including physical injuries, emotional distress, mental anguish, monetary damages and other damages.

## VII: LIABILITY CHIEF MARTIN GARZA

7.01   Plaintiff incorporates by reference the factual allegations contained in Section IV above.

7.02   Based on information and belief, as a high-ranking policymaker at the Mission Police Department (and in combination with other municipal policymakers at the City of Mission), Defendant, Chief Martin Garza, implicitly or explicitly, condoned a policy of tolerance towards Mission police officers' (1) arrests of citizens without probable cause, (2) creation of false police reports, and (3) use excessive force to subdue arrestees, Furthermore, Chief Martin Garza, implicitly or explicitly, condoned a policy if inadequate training and supervision of Mission police officers engaged in misconduct.

7.03   Defendant, Chief Martin Garza's policy/custom/practice of tolerance as noted above evidenced deliberate indifference on his part towards the constitutional rights of Ms. Ledezma and all persons present in the City of Mission and even Hidalgo County, Texas.

7.04   Defendant Chief Martin Garza who did not discipline for the subject incident between Plaintiff and Defendant Diaz de Villegas, ratified the excessive force used by Mission police officers, including Defendant Diaz de Villegas.

7.05   Defendant, Chief Martin Garza policy/custom/practice of tolerance proximately caused Ms. Ledezma's injuries and damages, including physical injuries, emotional distress, mental anguish, monetary damages and other damages.

7.06   It is not clear when Chief Martin Garza, Jr. stepped down as Chief of Police.

## VIII: LIABILITY CHIEF ROBERT DOMINGUEZ

8.01   Plaintiff incorporates by reference the factual allegations contained in Section IV above.

8.02   Based on information and belief, as a highest-ranking policymaker at the Mission Police Department (and in combination with other municipal policymakers at the City of Mission), Defendant, Chief Robert Dominguez, implicitly or explicitly, condoned a policy of tolerance towards Mission police officers' (1) arrests of citizens without probable cause, (2) creation of false police reports, and (3) use excessive force to subdue arrestees, Furthermore, Chief Robert Dominguez, implicitly or explicitly, condoned a policy if inadequate training and supervision of Mission police officers engaged in misconduct.

8.03   Defendant, Chief Dominguez's policy/custom/practice of tolerance as noted above evidenced deliberate indifference on his part towards the constitutional rights of Ms. Ledezma and all persons present in the City of Mission and even Hidalgo County, Texas.

8.04   Defendant Chief Dominguez, who did not discipline for the subject incident between Plaintiff and Defendant Diaz de Villegas, ratified the excessive force used by Mission police officers, including Defendant Diaz de Villegas.

8.05   Defendant, Chief Dominguez's policy/custom/practice of tolerance proximately caused Ms. Ledezma's injuries and damages, including physical injuries, emotional distress, mental anguish, monetary damages and other damages.

8.06   It is not clear when Chief Dominguez was promoted to Chief of Police for Mission, Texas.

## IX. DAMAGES

9.01   As a result of defendants' conduct, Ms. Ledezma received painful injuries and was falsely incarcerated.  Plaintiff, Ms. Ledezma, brings this action for the following damages that he sustained:

      a.    past physical pain and mental anguish;

      b.    past and future physical impairment;

      c.    past and future pain and suffering;

      d.    warrantless and unjustified incarceration; and

      e.    reasonable attorney's fees, expert fees and costs of court.

## X. JURY DEMAND

10.01  Plaintiff hereby demands a trial by jury.

## XI. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Ms. Ledezma, prays that Defendants be cited to appear and answer in this cause, and that upon final trial hereof, Plaintiff recovers judgment against Defendants, City of Mission, Texas; Omar Diaz de Villegas, Chief Martin Garza and Chief Robert Dominguez, jointly and severally, for actual and punitive damages (except the City of Mission) in amounts within the jurisdictional limits of this Court, for all damages respectively sustained by them as set forth above together with pre-judgment interest thereon at the maximum legal or equitable rate; for post-judgment interest on the amount of the judgment at the maximum rate allowed by law; for recovery of costs of court and reasonable expert fees; attorney's fees, and for such other and further relief, at law or in equity, to which they may show themselves justly entitled.

       Respectfully submitted,

       **RUIZ LAW FIRM, P.L.L.C.**
       118 W. Pecan
       McAllen, Texas 78501
       Telephone:  (956) 259-8200
       Telecopier:  (956) 259-8203

       _____/s/_____
       Mauro F. Ruiz
       State Bar No. 24007960
       **ATTORNEY FOR PLAINTIFF**